1

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                       FOR THE DISTRICT OF ARIZONA

8   Michael Jeffrey Pratt, II,           )
                                          )
9                Plaintiff,               )  CIV 13-01605 PHX GMS MEA
                                          )
10               v.                       )  REPORT AND RECOMMENDATION
                                          )
11  Bradley Carroll, John Lucas,          )
    Brian Morgenthaler,                   )
12  Roibert Englert, Megan Katharine      )
    Jacobson, Chandler Regional           )
13  Hospital, Chandler Police             )
    Department, Walmart,                  )
14                                        )
                 Defendants.              )
15  _____ )

16  TO THE HONORABLE G. MURRAY SNOW:

17          Plaintiff, proceeding pro se, filed a prisoner civil

18  rights complaint and an application (Doc. 2) for leave to

19  proceed *in forma pauperis* on August 7, 2013.  Plaintiff docketed

20  a first amended complaint (Doc. 6) on August 30, 2013.   There

21  are no Jane Doe or John Doe defendants named in the amended

22  complaint.   In the first amended complaint Plaintiff alleged,

23  *inter alia*, that, while under arrest by the Chandler Police

24  Department and at the Chandler Regional Hospital, Defendants

25  Lucas and Morganthaler, who are Chandler police officers,

26  forcibly restrained Plaintiff while "nurses" twice inserted a

27  catheter.  See Doc. 6.

28

In an order (Doc. 9) issued January 8, 2014, the Court granted Plaintiff's motion for leave to proceed *in forma pauperis*, dismissed Defendants Walmart, Chandler Regional Hospital, the City of Chandler Police Department, Carroll, and Englert, and ordered Defendants Lucas and Morganthaler to answer Plaintiff's claim (Count I (in part) and Count IV (in part)) of the first amended complaint, alleging that these two defendants forcibly restrained him for the purpose of catheterization in violation of Plaintiff's Fourth Amendment rights to be free of an unlawful search and excessive force.[1]   The Court found that Plaintiff had also stated a claim for relief based on the tort of intentional infliction of emotional distress.  See Doc. 9.

On March 28, 2014, Defendants Lucas and Morganthaler moved to dismiss Count IV.  In an order entered May 19, 2014, the Court granted Defendants' motion to dismiss Plaintiff's claim for intentional infliction of emotional distress.  See Doc. 18.  A scheduling order was issued June 2, 2014, requiring that any motion to add parties or amend the complaint be docketed by October 30, 2014, and that all discovery be completed by December 4, 2014.  The matter was reassigned on June 30, 2014.  See Doc. 21.

On June 2, 2014, Plaintiff docketed a motion (Doc. 30) captioned as one seeking to "amend pleading or join parties".

---

[1] The first page of the screening order indicates a Fourth Amendment claim, and later in the order the Court references a claim for excessive force.  Plaintiff alleged that, while under arrest, he had refused to give a urine sample and refused medical care and that no warrant had been obtained.

Plaintiff asked the Court to "bring in" parties, i.e., the Chandler Regional Hospital and four employees of the hospital. Plaintiff's pleading indicated these individuals were witnesses to the events alleged in his first amended complaint. The pleading did not indicate any factual claims against these individuals nor did the pleading attached a proposed amended complaint and, accordingly, the motion was denied on July 30, 2014. <u>See</u> Doc. 36. The parties have engaged in discovery. The depositions of Sandra Sovereign and Wilma Egan, who were alleged to be nurses present at the time of the catheterization alleged in the complaint, were noticed by Defendants. <u>See</u> Doc. 42 & Doc. 43. Plaintiff's deposition was noticed for September 17, 2014. <u>See</u> Doc. 49.

On September 4, 2014, Plaintiff docketed a motion seeking to amend the first amended complaint at Doc. 6. <u>See</u> Doc. 46. Plaintiff averred he had ascertained the identities of the people in the room when he was forcibly catheterized. Plaintiff sought to "bring in" to this action as defendants an unknown Chandler Police Officer, Doctor Keith C. Butler, Sandra Sovereign, a nurse, Wilma Egan, a nurse, and John Plummer, a nurse, "all who either ordered the catheterization or took part in it". Plaintiff also seeks to add as defendants the Chandler Regional Hospital and the City of Chandler, based on these entities' employment of named Defendants. The motion was denied on July 30, 2014, because Plaintiff had not lodged a proposed amended complaint.

On September 24, 2014, Plaintiff docketed a motion for leave to amend his complaint, <u>see</u> 51, and on October 6, 2014, Plaintiff lodged a proposed amended complaint (Doc. 52). Defendants opposed the motion on October 6, 2014, arguing that Plaintiff did not lodge a proposed amended complaint in tandem with his motion. <u>See</u> Doc. 53. Defendants further argue:

> Even if Plaintiff's recent motion is interpreted as an amended complaint, Plaintiff's renewed motion is also inadequate because it completely fails to identify any other defendants by name other than "3 [unidentified] police officers" and "3 [now still unidentified] hospital personnel" who catheterized him pursuant to a doctor's orders, and how they specifically participated in the acts. Although Plaintiff's earlier motion identified some medical staff by name, until they are actually identified in an amended complaint, it is impossible to determine who he actually intends to assert claims against. As with his earlier unsuccessful attempt to bring in an unknown third police officer, his renewed motion to amend still only alleges that an "unknown 3rd police officer" somehow also participated. Doc. 51 at 5. Plaintiff goes so far to admit that he "never said" that the officers "ordered the urinalysis" (Doc 51 at 3), but only that they generally "partook in it," (Id.), and were "in the room" (Doc. 51 at 4), but he still fails to plead the specific acts that allegedly make each individual liable. Absent these allegations that the court advised him were necessary, it is also impossible to conduct additional discovery.

Defendants also argue:

> Without more than is alleged now it is even doubtful that the privately owned Dignity Health, Chandler Regional Medical Center is liable under section 1983. <u>Kia P. v. McIntyre</u>, 235 F.3d 749 (2d Cir. 2000) (privately owned and administered hospital was not a "state actor" under § 1983 when its

> employees tested child's urine for drugs). Additionally, the current filings do not allege a single fact about any theory of liability of the City of Chandler.

On October 17, 2014, Defendants filed a motion (Doc. 54) to strike the lodged amended complaint at Doc. 52. On October 21, 2014, Defendants docketed a motion for summary judgment. <u>See</u> Doc. 55. Defendants aver:

> Defendants John Brett Lucas and Brian Morgenthaler now move for summary judgment based on the defense of qualified immunity on Plaintiff's only remaining claim for excessive force (alleged in part in Count I) when Defendants Lucas and Morgenthaler assisted in holding him down while hospital nursing staff catheterized him for a urine sample without his consent or a warrant. <u>See</u> Doc. 9 (dismissing Count I (in part) and Counts II & III) & 18 (dismissing intentional infliction of emotion al distress). This motion is made on the grounds that qualified immunity protects the police officers who assisted medical staff in catheterizing the Plaintiff on the grounds that the catheterization and the urine sample was obtained solely by Chandler Regional Medical Center medical staff on a doctor's orders for medical purposes to treat Plaintiff, and such urine sample and catheterization was not requested or ordered by the officers for any law enforcement or governmental purposes, and was not used for any such purposes.

Defendants assert:

> On September 11, 2012, after receiving a report of the attempted use of a stolen credit card being used at a Chandler Walmart, Chandler Police Officers Lucas and Carroll encountered the Plaintiff in the checkout line at the Walmart. DSOF ¶ 1. As Officers Lucas and Carroll attempted to arrest Pratt, an altercation ensued in which Pratt forcefully struggled to get free, yelled, screamed and resisted the officers' attempts to handcuff him. DSOF ¶ 2. During the

struggle, Pratt was "tased" by one of the officers, and was eventually handcuffed. DSOF ¶ 3. Officer Morgenthaler arrived shortly thereafter. DSOF ¶ 4. During the struggle with officers, Pratt suffered a bleeding head injury and blood was left on the floor of the Walmart. DSOF ¶ 5 and ¶ 6. Even after being handcuffed, as the officers attempted to search him, Pratt intermittently either continued to forcefully struggle with officers or went limp, and they eventually had to take him to the ground to search him. DSOF ¶ 7. When Pratt was eventually placed in the back of a patrol car, he had problems sitting up, went limp and slumped over, and was unresponsive to officers' repeated inquiries about what was wrong. DSOF ¶ 8. Because of Pratt's behavior and unresponsiveness, Chandler Fire Department personnel were summoned to treat Pratt's injuries and he was transported to the Chandler Regional Medical Center emergency room. DSOF ¶ 9. Even while in the ambulance being transported, Pratt was extremely agitated, breathing heavily, and yelling incoherent statements and profanities. DSOF ¶ 10.

In the Chandler Regional Medical Center emergency room, Officers Morgenthaler, Lucas and Carroll were present with nurses and other medical staff while the medical staff treated Pratt's injuries. DSOF ¶ 11. Because Pratt was still under arrest and in the officers' custody in the emergency room he was handcuffed to a gurney. DSOF ¶ 13. During his treatment, Pratt was agitated from time to time. DSOF ¶ 13.

John Plummer is a registered nurse who worked at the Chandler Regional Medical Center emergency room where ambulances typically off-load patients, and he assisted in Pratt's treatment there that day. DSOF ¶¶ 14-15. For the purposes of assessing and treating patients in the emergency room, it was Plummer's practice to review EMS records that fire and ambulance personnel typically provide to emergency room nurses in the emergency room. DSOF ¶¶ 16-17. When Pratt arrived there Nurse Plummer's role and his practice in assessing patients would have been to review this record for Pratt, and he likely did so. DSOF ¶¶ 17-18. According to Pratt's EMS record when he arrived at the

-6-

emergency room his condition was described as
"ALOC" (altered level of consciousness), he
had a heart rate of 126, a hematoma injury on
his head, was reported to have
methamphetamine in his possession, and was
aggressive. DSOF ¶ 16. In assessing and
treating Pratt, Nurse Plummer was concerned
with the information on the EMS record that
showed that Pratt was reactive only to pain,
that he had an altered level of consciousness
and a high heart rate of 126, and that Pratt
had been found to be in possession of
methamphetamine. DSOF ¶ 19. During Pratt's
treatment the attending physician ordered
that a urinalysis be performed. DSOF ¶ 20.
Because of the information about Pratt's
condition and his reported possession of
methamphetamine, Nurse Plummer was concerned
that Pratt had ingested something such as
methamphetamine, which can cause muscle
breakdown; to reverse the effects of any
drugs, a urinalysis or drug screen was needed
to treat Pratt because it was the only method
to determine "what was going on with him" and
what drugs were "in board." DSOF ¶¶ 21, 22,
42, 44. Because of Pratt's altered level of
consciousness and high heart rate, a
urinalysis was also needed determine whether
he had an infection, an electrolyte
imbalance, there was protein or sugar in his
urine, and he was having a diabetic reaction,
or suffering from rhabdomyolosis or
dehydration and renal failure, which can be
fatal. DSOF ¶¶ 23-24. After Pratt either
refused or was unresponsive to Plummer's
request to provide a urine sample in a
urinal, Plummer asked for and received the
doctor's permission to obtain a urine sample
by catheterization. DSOF ¶¶ 26-31.
Because Pratt's violent behavior during
Plummer's first attempt to catheterize Pratt
for a urine sample caused both the nurses and
the officers to be concerned that they could
be injured. For this reason Plummer knew he
needed help and asked for assistance from
other nurses and the officers in holding
Pratt to avoid an assault or injury to any
medical staff or Pratt. DSOF ¶¶ 32-39.
Plummer had obtained such assistance from
officers in the past in similar circumstances
with violent patients. DSOF ¶ 38. The
officers only assisted medical staff in
holding Pratt during the nurse's

> catheterization and did not request Pratt to
> provide a urine sample, or request or order
> the nurses to obtain a urine sample or
> catheterize Pratt. DSOF ¶¶ 38–44. Plummer
> testified that the officers in the room "were
> really the last thing on my mind, to be quite
> honest. I wanted to know what was going on
> with him [Pratt]," and he did not catheterize
> Pratt to assist the officers in any way. DSOF
> ¶ 44. Pratt's eventual urinalysis and drug
> screen was significant to Plummer because it
> was positive for methamphetamine and Pratt
> could not be safely sent home immediately and
> had to be observed for a period of time. DSOF
> ¶ 42.
> Plummer agreed that he catheterized Pratt
> solely from a medical standpoint and to
> provide Pratt proper medical treatment.

Doc. 55.

Rule 15(a), Federal Rules of Civil Procedure, provides that a plaintiff should be given leave to amend his complaint when justice so requires. See, e.g., United States v. Hougham, 364 U.S. 310, 316, 81 S. Ct. 13, 17 (1960); Howey v. United States, 481 F.2d 1187, 1190 (9th Cir. 1973). "Courts are free to grant a party leave to amend whenever 'justice so requires,' Fed. R. Civ. P. 15(a)(2), and requests for leave are generally granted with 'extreme liberality.'" Moss v. United States Secret Service, 572 F.3d 962, 972 (9th Cir. 2009), citing Owens v. Kaiser Foundation Health Plan, Inc., 244 F.3d 708, 712 (9th Cir. 2001). However, granting a plaintiff leave to amend "is subject to the qualification that the amendment not cause undue prejudice to the defendant, is not sought in bad faith, and is not futile." Thornton v. McClatchy Newspapers, Inc., 261 F.3d 789, 799 (9th Cir. 2001) (citation omitted). Additionally, the Prison Litigation Reform Act, 42 U.S.C. § 1997e(c)(1), requires

dismissal of allegations that fail to state a claim upon which relief can be granted.   See, e.g., O'Neal v. Price, 531 F.3d 1146, 1153 (9th Cir. 2008).   Granting or denying leave to amend is within the Court's discretion. See Mirmehdi v. United States, 689 F.3d 975, 985 (9th Cir. 2012) ("[A] party is not entitled to an opportunity to amend his complaint if any potential amendment would be futile...."(citation omitted)).

Futility of amendment is sufficient to justify denial of a motion for leave to amend.   See Gordon v. City of Oakland, 627 F.3d 1092, 1094 (9th Cir. 2010); Bonin v. Calderon, 59 F.3d 815 (9th Cir. 1995).   A proposed amended complaint is futile if it would be immediately "subject to dismissal" pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure, for failure to state a claim on which relief may be granted, accepting all of the facts alleged as true.   See Steckman v. Hart Brewing, Inc., 143 F.3d 1293, 1298 (9th Cir. 1998); Riverview Health Inst. LLC v. Medical Mutual of Ohio,601 F.3d 505, 512 (6th Cir. 2010); Briggs v. Mississippi, 331 F.3d 499, 508 (5th Cir. 2003).

To state a section 1983 claim, a plaintiff "must show (1) that Defendants deprived [him or] her of a right secured by the Constitution or laws of the United States and (2) that, in doing so, Defendants acted under color of state law." Jensen v. Lane County, 222 F.3d 570, 574 (9th Cir. 2000). For a deprivation of a right to be committed under color of law, it "must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the state or by a person for whom the State is responsible," and

"the party charged with the deprivation must be a person who may fairly be said to be a state actor." Lugar v. Edmondson Oil Co., 457 U.S. 922, 937, 102 S.Ct. 2744, 2753-54 (1982). A section 1983 claim may be brought against a private party when that party "is a willful participant in joint action with the State or its agents." Kirtley v. Rainey, 326 F.3d 1088, 1092 (9th Cir. 2003) (internal quotation omitted).

The proposed amendments are futile. The federal courts have concluded that when an arrestee is catheterized against their will for a purely medical purpose, as compared to the purpose of seizure of evidence, and when the catheterization is conducted pursuant to the order of a doctor who is an employee of a private medical facility, even when police officers assist in restraining the arrestee, the plaintiff may not recover pursuant to section 1983 for an illegal search and seizure or a violation of their right to due process. See Sullivan v. Bornemann, 384 F.3d 372, 376-77 (7th Cir. 2004); Cook v. Olathe Medical Center Inc., 773 F. Supp. 2d 990, 1008-12 & n.28-32 (D. Kan. 2011)(collecting and explaining cases)[2]; Saulsberry v.

---

[2] In Cook the court found summary judgment was not appropriate because it was unknown if the urine sample was acquired for the purpose of providing evidence of a crime, stating:
> The record supports the conclusion that Dr. Karlin ordered a urine test, but it is silent as to whether he ordered staff to forcibly catheterize plaintiff. Kibbee and Smith [the officers] physically held down plaintiff for the procedure and obtained a sample for criminal investigation purposes. Viewing this evidence in the light most favorable to plaintiff, a reasonable fact finder could conclude that Kibbee and Smith helped cause the catheterization to occur."

Maricopa County, 151 F. Supp. 2d 1109, 1116-17 (D. Ariz. 2001)("Because Plaintiff was catheterized solely for medical reasons, it does not constitute either a search or a seizure."); Rudy v. Village of Sparta, 990 F. Supp. 924, 929 (W.D. Mich. 1996)(holding that where police officer waived inapplicable search warrant, attempted to restrain plaintiff, and instructed technician to "just do it", he was not liable for search because the doctor ordered the catheterization and police officer told the technician to "just do it" only after plaintiff refused to comply with the doctor's orders); Lovett v. Boddy, 810 F. Supp. 844, 848-49 (W.D. Ky. 1993)(holding that police officer is not liable for warrantless search where he did not cause the catheterization to take place). These cases note that, because section 1983 and the Fourteenth Amendment are directed at the states, relief is available only when the alleged injury is caused by "state action" and not by a private actor, against whom tort remedies may be sought in state court. Accordingly, the section 1983 claims stated by Plaintiff in the lodged amended complaint against the medical personnel and the hospital are not cognizable. See, e.g., United States v. Walther, 652 F.2d 788, 791 (9th Cir. 1981) (noting that "where the private party had a legitimate independent motivation for" engaging in the challenged conduct, the Fourth Amendment does not apply); United States v. Howard, 752 F.2d 220, 227 (6th Cir. 1985) (finding that a private party is not an agent of the government when "the intent of the private party conducting the search is entirely independent of the government's intent to collect

evidence for use in a criminal prosecution"); <u>Rudy</u>, 990 F. Supp. at 930-31. <u>See also</u> <u>United States v. Chukwubike</u>, 956 F.2d 209, 212 (9th Cir. 1992)(holding that physicians were not government agents and did not conduct a "search" when they acted for medical reasons to save plaintiff's life by removing balloons containing heroin from plaintiff's stomach and rectum and that the lack of plaintiff's consent did not nullify the physicians' medical judgment).

Accordingly,

**IT IS RECOMMENDED that** Plaintiff's motion (Doc. 51) for leave to amend his complaint be **denied.**

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the District Court's judgment.

Pursuant to Rule 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. Thereafter, the parties have fourteen (14) days within which to file a response to the objections. Pursuant to Rule 7.2, Local Rules of Civil Procedure for the United States District Court for the District of Arizona, objections to the Report and Recommendation may not exceed seventeen (17) pages in length.

1        Failure to timely file objections to any factual or

2    legal determinations of the Magistrate Judge will be considered

3    a waiver of a party's right to de novo appellate consideration

4    of the issues.  See United States v. Reyna-Tapia, 328 F.3d 1114,

5    1121 (9th Cir. 2003) (en banc).  Failure to timely file

6    objections to any factual or legal determinations of the

7    Magistrate Judge will constitute a waiver of a party's right to

8    appellate review of the findings of fact and conclusions of law

9    in an order or judgment entered pursuant to the recommendation

10   of the Magistrate Judge.

11       DATED this 5th day of November, 2014.

12

13   _____

                    Mark E. Aspey

14         United States Magistrate Judge

-13-